UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JASON RICHEY d/b/a )
ON TIME SERVICES, )
            )
    Plaintiff, )
            )   No. 3:07-CV-466
            )   (VARLAN/SHIRLEY)
v. )
            )
MOTION INDUSTRIES, INC., )
            )
    Defendant. )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, the Rules of this Court, and the order of the District Court [Doc. 96] referring Plaintiff Jason Richey's Motion for Attorneys' Fees and Related Nontaxable Expenses [Doc. 82], to this Court for report and recommendation or disposition, as may be appropriate. The Court held a hearing on November 23, 2009, to address the Plaintiff's request for attorneys' fees and the Defendant's objections thereto. Attorneys Tasha Blakney and Troy Weston were present representing the Plaintiff, and Attorneys Tony Dalton and Meghan Morgan were present representing the Defendant.

I.    **BACKGROUND**

The pertinent history of this matter is as follows. On November 14, 2007, the Plaintiff filed the instant case in state court alleging breach of contract by the Defendant. The matter was subsequently removed to this Court. On January 9, 2009, the Plaintiff filed a Motion for Summary Judgment [Doc. 14], which was denied by District Judge Thomas A. Varlan on April 21, 2009, [Doc.

36]. This matter proceeded to trial on May 11, 2009, and on May 14, 2009, the Jury returned a verdict in favor of the Plaintiff in the amount of $98,800.00. [Doc. 72]. The Plaintiff had originally sought $300,000.00, in damages, but at the time of trial, a doubling provision contained in the contract had been deemed a penalty and rendered moot. Thus, the jury at most could have awarded $150,000.00.

On June 15, 2009, the Plaintiff filed the instant motion moving the Court to award $148,905.00 in attorneys' fees and $1,183.97 in nontaxable expenses to the Plaintiff. [Doc. 82 at 1]. On June 30, 2009, the Defendant responded in opposition to the Plaintiff's request, [Doc. 86], and the Plaintiff made his final reply on July 14, 2009 . On August 31, 2009, the Plaintiff supplemented his initial motion to reflect work on the case that occurred after the initial request. Pursuant to this supplemental request, the Plaintiff now seeks $163,227.50 in attorneys fees and $1,770.63 in nontaxable expenses. [Doc. 94 at 2]. This matter was referred to the undersigned on September 17, 2009.

After a hearing on November 23, 2009, the Plaintiff filed a supplement to the hearing which included the representation agreements between himself and counsel on December 22, 2009. [Doc. 105]. The Defendant responded to this supplement on January 8, 2010, [Doc. 106], and the Plaintiff made a final reply on January 13, 2010. [Doc. 107].

II.     ANALYSIS

The Plaintiff moves the Court to order that the Defendant pay the attorneys' fees and nontaxable expenses incurred in litigating this action. This action was brought based upon breach of a contract executed between the parties on August 10, 2004. The contract at issue provides, in substance, that the Defendant will incur any "legal fees" that are incident to the performance of the
2

contract. The Defendant has objected to the Plaintiff's prayer for an award of attorneys' fees and costs, on a number of grounds. The Court will address the Plaintiff's request and the Defendant's objections thereto below.

**A.     Applicable Law**

When a court exercises its diversity jurisdiction pursuant to 28 U.S.C. § 1332, attorney's fees should be awarded only if authorized under state law. <u>Acwoo Intern. Steel Corp. v. Toko Kaiun Kaish, Ltd.</u>, 840 F.2d 1284, 1291 (6th Cir. 1988) (citing 19 C. Wright, A. Miller & H. Cooper, Federal Practice and Procedure § 4513 (West 1982)). In this case, the law of the State of Tennessee is the applicable state law, and the issues presented will be analyzed accordingly.

**B.     Right to Recover Fees**

Tennessee follows the "American rule" with regard to attorneys' fees. <u>Holcomb v. Cagle</u>, 277 S.W.3d 393, 398 (Tenn. Ct. App. 2008). "Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." <u>Cracker Barrel Old Country Store, Inc. v. Epperson</u>, 284 S.W.3d 303, 308 (Tenn. 2009) (citing <u>Taylor v. Fezell</u>, 158 S.W.3d 352, 357 (Tenn. 2005)). "In the context of contract interpretation, Tennessee allows an exception to the American rule only when a contract specifically or expressly provides for the recovery of attorney fees." <u>Cracker Barrel</u>, 284 S.W.3d at 309 (citing <u>House v. Estate of Edmondson</u>, 245 S.W.3d 372, 377 (Tenn. 2008)) .

In the instant matter, the Plaintiff maintains that a provision within the contract shifts responsibility for paying the Plaintiff's legal fees from the Plaintiff to the Defendant. In its response, the Defendant contends that the agreement between the Plaintiff and the Defendant does not

3

specifically or expressly provide for attorneys' fees, and therefore, the Defendant maintains that the provision does not shift the burden of paying the Plaintiff's attorneys' fees to the Defendant. [Doc. 86 at 3]. More specifically, the Defendant argues that the term "legal fees," which is used in the provision, is ambiguous, and its ambiguity should be construed against the Plaintiff, as the drafter of the contract. [Doc. 86 at 4].

At the hearing, the Defendant conceded that the ambiguity argument was not its most persuasive contention, and the Defendant declined to reinforce or expound upon the argument. While the Court agrees that the term "legal fees" is perhaps a more inclusive term than "attorneys' fees," the Court finds that the use of the term "legal fees" is sufficiently specific. The term "legal fees" might also include other fees such as filing fees, but it constitutes a contractual or statutory provision creating a right to recover attorneys' fees. The Defendant argues that the "fact that [the Plaintiff] is clearly using the words 'legal' and 'attorney' interchangeably is illustrative of the term's ambiguity." [Doc. 86 at 4].

"When resolving disputes concerning contract interpretation, [a court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." Johnson v. Johnson, 37 S.W.3d 892 (Tenn. 2001) (citing Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn.1999)). The provision at issue states: "Any legal fees will be incurred by Motion Industries." [Doc. 82-1 at 3]. The Court finds that the usual, natural, and ordinary meaning of this provision is that the legal fees, including attorneys' fees, would be incurred by the Defendant. To find that the parties meant for this provision to merely reassign responsibility for the cost of filing a suit or similar discrete costs, would be to ignore the natural and ordinary meaning of the provision. Accordingly, the Court finds that the term "legal fees" is not ambiguous, and the Court further finds

4

that the contract specifically provides for an award of attorneys' fees.

Finally, at the hearing on this matter, the Defendant maintained that the Plaintiff was not the prevailing party in this matter. The Defendant based this position on a comparison of the relief sought and relief obtained by the Plaintiff. The Defendant quotes extensively from Hensley v. Eckerhart, 461 U.S. 424 (1983), in support of its argument. The Defendant has acknowledged, to a degree, that Hensley analyzed a specific statutory provision, 42 U.S.C. § 1988, and its accompanying legislative history. The Defendant cites excerpts of the Court's analysis of the prevailing party standard in Hensley, which in whole states:

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

Id. at 433 (internal citations and footnotes omitted). While the analysis contained in Hensley is helpful in framing and evaluating the issues before the Court, the pronouncements in Hensley speak specifically to § 1988.

The Court finds that the Plaintiff is not precluded from receiving an award of attorneys' fees because he failed to obtain all the relief for which he prayed. In this case, any attorneys' fees are to be awarded pursuant to a contract provision rather than § 1988 or other statutory provision. The Court finds that, to the extent the Defendant argues that the Plaintiff should be precluded from receiving an award because he is not the prevailing party pursuant to Hensley, the Defendant's argument is not well-taken.

In sum, the Court finds that the Plaintiff is the prevailing party in this matter, and pursuant to the parties' contract, the Plaintiff is entitled to an award of attorneys' fees incurred in prosecuting this matter.

**C.     Plaintiff's Recovery Pursuant to the Parties' Contractual Agreement**

As the Court previously noted, the provision of the parties' contractual agreement at issue states: "Any legal fees will be incurred by Motion Industries." [Doc. 82-1 at 3]. To determine the fees "incurred" in this matter, the Court looks to the agreement between Plaintiff and his counsel. In supplemental briefing, the Plaintiff has submitted two contracts/letters said to embody the representation agreement between himself and counsel–one composed at the inception of this litigation and one composed after a verdict was rendered. The Plaintiff argues that the Court should calculate fees pursuant to the later agreement, while the Defendant maintains that an fee award should be calculated pursuant to the earlier agreement.

*1.     The Representation Agreements*

The first representation letter is dated June 5, 2007. Therein, Attorney Blakney states:

> We will not charge [you] for our legal services (other than expenses) unless or until we obtain payment of an award or settlement or until we obtain an offer of settlement, which, in our judgment, should be accepted by you. Our fee for the legal services rendered on your behalf in this case will be one-third of the gross recovery.

[Doc. 105-2 at 4]. The letter/contract further states, "this agreement constitutes the entire contract of representation between these parties and shall not be amended or construed to be amended unless the amendment is in writing and signed by the firm and [the Plaintiff]." [Doc. 105-2 at 5]. The Plaintiff signed this letter, along with counsel, to "acknowledge and confirm their agreement to all of the terms of [the letter/contract] of representation . . . ." [Doc. 105-2 at 6].

6

The trial of this matter took place from May 11-14, 2009. Thereafter, in a letter dated June 15, 2009, Attorney Blakney and the Plaintiff executed a second letter/contract, which was similar in format to the initial letter/contract. Attorney Blakney stated that she was writing to "clarify . . . the method in which our attorney-client agreement will function with regard to fees in the event that the Court awards attorneys' fees to you as the prevailing party in the above-referenced case." [Doc. 105-1 at 7]. Both Attorney Blakney and the Plaintiff have submitted affidavits stating that before this agreement was executed there were "ongoing discussions" about the terms contained therein. [See Doc. 105-1 at 2 and Doc. 105-2 at 2].

In pertinent part, Attorney Blakney states, "as we have discussed and agreed upon, my firm will be entitled to either a one-third contingency fee, or the ward of attorneys' fees made by the Court, whichever is greater." [Doc. 105-1 at 7].[1] Further, Attorney Blakney states that she will "submit a request for attorneys' fees in the amount of $275 per hour for my time spent in the pursuit of your case and the hourly rate of $175 per hour for the legal work and time expended for associate attorneys of this firm." [Doc. 105-1 at 7]. The letter concludes by stating:

> Thus, consistent with our agreement, this firm will either be compensated on the basis of the one-third contingency fee arrangement *or* in accordance with an award of attorneys' fees made by the Court, whichever is greater, and allowing for a credit to you should the amount of the contingency fee exceed any court ordered award of fees.

[Doc. 105-1 at 8]. The Plaintiff and Attorney Blakney signed this letter/contract to acknowledge

---

[1]This agreement appears to create a type of hybrid fee arrangement that removes the risk inherent in a contingency fee agreement and arguably undermines the equity of such an arrangement. However, because the Court ultimately concludes that this agreement is not the agreement underwhich the attorneys' fees will be calculated, the Court finds the issue of the equity of such an arrangement to not be properly before the Court.

their agreement to the terms and modification contained therein. [Doc. 105-1 at 8].

*2.  Applicable Agreement*

Counsel for the Plaintiff has presented the Court with two representation agreements: the agreement dated June 5, 2007, (hereinafter "the 2007 Agreement"), and the agreement dated June 15, 2009, (hereinafter "the 2009 Agreement"). The documentation submitted to the Court by Plaintiff's counsel clearly demonstrates, counsel's intention to seek an award of attorneys' fees based upon an hourly calculations, rather than the initial contingency fee agreement entered into by the Plaintiff and Attorney Blakney. [See Doc. 94 at 2]. Thus, counsel for the Plaintiff moves the Court to make an award pursuant to the 2009 Agreement rather than the 2007 Agreement.

The Defendant notes that during the during pretrial discovery, the trial of this matter, and at the time of filing of many of post-trial motions in this case, the parties were operating under the 2007 Agreement. [Doc. 106 at 3]. The Defendant argues that it would be unjust to calculate the fee award under the 2009 Agreement.

The Court has found no cases under Tennessee law addressing the issue now before the Court. However, after examining other persuasive authority, the parties' agreement, and the timeline of events in this matter, the Court finds that an award of attorneys' fees in this matter should be made under the 2007 Agreement, as written.

As is often the case, the Plaintiff in this matter retained counsel on a contingency fee basis. The Plaintiff would not be billed based upon hourly calculations as the matter proceeded, but instead, the Plaintiff would pay nothing until a verdict or favorable settlement was reached. Counsel for the Plaintiff would be paid a fee in the form of an agreed percentage of the recovery; in this case thirty-three and one-third percent.

8

As the Tennessee Court of Appeals has explained,

> Contingent fee arrangements serve a two-fold purpose. First, they enable clients who are unable to pay a reasonable fixed fee to obtain competent representation. Second, they provide a risk-shifting mechanism not present with traditional hourly billing that requires the attorney to bear all or part of the risk that the client's claim will be unsuccessful.
>
> In circumstances where a client is unable to pay a regular hourly fee, the purpose of a contingent fee arrangement is to create a fund from which the fee can be paid at the conclusion of the proceedings. Contingent fees are generally higher than hourly fees, because the attorney has assumed a significant degree of risk that he or she will not be compensated if the outcome is not successful.

Alexander v. Inman, 903 S.W.2d 686, 696 (Tenn. Ct. App. 1995) (internal citations omitted). Due to the potential risk and benefit to both parties, the Tennessee Rules of Professional Responsibility, which also govern matters in this Court,[2] instruct that the contingency fee must be entered into through a writing signed by the client and that the attorney must provide a written statement of the outcome and any remittance to the client. Tenn. Sup. Ct. R. 8, RPC 1.5(c).

In the instant case, the contingency fee agreement enabled the Plaintiff to retain counsel for this matter without traditional initial payments and periodic payments for service. However, the Plaintiff undertook the risk that counsel would receive a higher fee than they would have under an hourly calculation. Similarly, counsel undertook the burden of working on this case without payment until its conclusion. However, counsel stood to receive a higher fee as a result of taking on this risk.

After the jury had returned its verdict in favor of the Plaintiff, it became possible for the Plaintiff to recover fees under the contract from the Defendant. Plus, after receiving a verdict of

---

[2] See E.D. Tenn. LR 83.6.

$98,800.00, counsel for the Plaintiff could calculate that the contingency fee to counsel, under the 2007 Agreement, would be $32,933.33. Essentially, after the jury returned its verdict, the Plaintiff and counsel's knowledge changed significantly. Much of the risk and speculation about the contingency fee had been removed.

The Defendant directs the Court to Gametech International, Inc., v. Trend Gaming Systems, LLC, 380 F. Supp.2d 1084 (D. Ariz. 2005). In Gametech, the court held that a fee agreement that was in place before the entry of a verdict would govern a fee award, not a fee agreement entered into after the entry of the verdict. While Gametech is not binding authority upon this Court, it is factually analogous to the present situation,[3] in that the movant sought to calculate a fee award pursuant to a fee agreement that had been agreed upon after a verdict had been entered.

The court in Gametech found it doubtful that the plaintiff and its counsel would have modified their fee agreement had they not prevailed at trial and noted that the modification to the fee agreement presented an untenable position of allowing the counsel to convert "success at trial as an opportunity to increase its recovery of unpaid attorneys' fees." Id. at 1094. The court explained:

> While a prevailing party and its counsel are free to voluntarily renegotiate a binding fee agreement between themselves at any time, this Court will not foist the burden of increased fees upon the losing party post-verdict with the benefit of the prevailing party's 20/20

---

[3]The Plaintiff objects that the Gametech decision is based upon Arizona law, but the Plaintiff has not directed the Court to any way in which Arizona law differs from the Tennessee law applicable to the instant case. The Plaintiff notes the factors that are to be considered in determining the reasonableness of a fee under Tennessee law [Doc. 107 at 8], but neither the instant matter nor the decision in Gametech turned on these factors. Assuming *arguendo* that these factors were necessary to the decision made either in Gametech or in the instant matter, Arizona applies an version of Rule 1.5 of the Rules of Professional Conduct that is virtually identical to Rule 1.5 of the Tennessee Rules of Professional Conduct. See Ariz. R. Sup. Ct. 42, ER 1.5; see also In re Connelly, 203 Ariz. 413, 418 (Ariz. 2002).

10

> hindsight. In the Court's view, if such an award were imposed upon the unsuccessful party, it would be an unreasonable one.

Id.

In this matter, to award an hourly fee under the 2009 Agreement would be similarly unreasonable. While the Plaintiff has presented sworn statements that he and counsel agreed to modify their fee arrangement prior to the entry of a verdict in this matter, [Doc. 105-1 and 105-2], the fee agreement was *not* in fact modified before the entry of the verdict. Plaintiff's counsel drafted the 2007 Agreement with a provision that stated that it would only be modified in writing, and the Plaintiff agreed to this provision. The Plaintiff and counsel did not take the necessary steps to modify the agreement until *after* both had the benefit of post-verdict knowledge—specifically, the knowledge that the verdict in this matter was $98,800.00, which would render a contingency fee under the agreement of $32,933.33, and the knowledge that the chances of an award of attorneys fees being entered had increased substantially.

The unreasonableness of allowing a post-verdict modification is re-enforced by the 2009 Agreement itself. The 2009 Agreement states that Attorney Blakney "will submit a request for attorneys' fees in the amount of $275 per hour for my time spent in the pursuit of your case and the hourly rate of $175 per hour for the legal work and time expended for associate attorneys of this firm." [Doc. 105-1 at 7]. This language suggests that Attorney Blakney did not intend to charge the Plaintiff these hourly rates and had no intention of submitting hourly billings to the Plaintiff at this rate. Instead, the language indicates simply that Attorney Blakney would submit this hourly billing in the attempt to recover a fees award against the Defendant. A true modification of the agreement would have, in substance, stated that the fee charged to the Plaintiff would no longer be calculated

11

on a contingency basis and that counsel would now be paid based upon the hours expended, at the rates stated. The language in the 2009 Agreement does not purport to make such a modification. Thus, the Court finds that, even if the 2009 Agreement were to be entertained as a modification despite its tardiness, it does not modify the understanding between the Plaintiff and counsel to enact a hourly billing agreement and nullify the contingency fee agreement.

The hallmark of attorneys' fees calculations is that an award should be reasonable. The Plaintiff and counsel entered into a written agreement regarding fees that governed the fee to be charged in this case from the case's inception through verdict and a number of post-verdict motions. To allow the Plaintiff to modify this agreement, equipped with knowledge of the verdict, would be unreasonable. While the Court will not engage in speculation about counsel's motives, the 2009 Agreement, by its own terms, only states that counsel will submit a request pursuant to an hourly billing scheme, not that the Plaintiff would be charged under the same hourly billing scheme. Even if it were not unreasonable in its timing, the substance of the 2009 Agreement does not actually change the agreement between the Plaintiff and counsel to an hourly calculation, and thus, the 2009 Agreement is of no affect on the award.

Finally, the fee request, pursuant to the 2009 Agreement, currently stands at $163,227.50. A fee request for $163,227.50, in a contract matter that pursuant to the contract provisions could have rendered a verdict of $300,000.00, if the doubling provision had been considered, and actually only rendered a verdict of $98,800.00, after the ceiling for the verdict was reduced to $150,000.00, appears unreasonable on its face.

Accordingly, the Court finds that the 2007 Agreement [Doc. 105-1 at 4-6] governs the fee award in this case.

12

Case 3:07-cv-00466   Document 108   Filed 02/03/10   Page 12 of 14   PageID #: 1689

*3. Amount of Award*

The Court has found that an award of reasonable attorneys' fees is appropriate, and the Court has further found that fees incurred in this matter were incurred pursuant to the 2007 Agreement, which provided for counsel to be paid one-third of the verdict entered in this case. The jury has awarded the Plaintiff $98,800.00. Accordingly, the Court finds that the an award in the amount of **$32,933.33**, should be entered in favor of the Plaintiff, to represent the attorneys' fees incurred by the Plaintiff in this litigation.

**D.   Nontaxable Expenses**

Finally, the Plaintiff moves the Court for an award of nontaxable expenses. [Doc. 82 at 1]. The Defendant has lodged no specific objection to the nontaxable expenses sought. The Plaintiff seeks expenses for postage, photocopying expenses, long-distance charges, and itemized online research, in the amount of $1,770.63. [Doc. 82-10 at 2-3; Doc. 94 at 2]. The office manager for Eldridge & Blakney has attested that none of these costs duplicate costs that have been requested in the Bill of Costs filed in this matter. [Doc. 82-10 at 3].

The Court finds that these expenses fall within the contractual provision requiring that the Defendant pay "legal fees." Further, the Court finds these expenses to be reasonable. An award of **$1,770.63**, should be entered in favor of the Plaintiff, to represent the nontaxable expenses incurred by the Plaintiff in this litigation.

### III. CONCLUSION

In sum, the Court hereby **RECOMMENDS**[4] that Plaintiff Jason Richey's Motion for Attorneys' Fees and Related Nontaxable Expenses **[Doc. 82]** be **GRANTED IN PART** and **DENIED IN PART**. It is this Court's recommendation, that the Motion be granted to the extent it requests an award of attorneys' fees and nontaxable expenses, but the Court recommends that the Motion be denied to the extent it seeks attorneys' fees in excess of $32,933.33. Accordingly, it is the Court's **RECOMMENDATION** that a judgment awarding the Plaintiff **$34,703.96**, in attorneys' fees and non-taxable expenses, be entered.

Respectfully Submitted,

  s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).